UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT P. MADIGAN,

                       Plaintiff,

       - *against* -

KILOLO KIJAKAZI,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

19 Civ. 5725 (AEK)

**DECISION AND ORDER**

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[2]**

Plaintiff Robert D. Madigan brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner"), which denied his application for disability insurance benefits ("DIB").  ECF Nos. 1, 4.[3]  Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and the Commissioner moved to remand the matter for further

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted as the Defendant in this action.

[2] The parties originally consented to the jurisdiction of Magistrate Judge Lisa Margaret Smith for all purposes pursuant to 28 U.S.C. § 636(c) on August 5, 2019.  ECF No. 20.  The case was reassigned to the undersigned on October 15, 2020.

[3] Due to a filing error, the Complaint (ECF No. 1) had to be re-filed (ECF No. 4).  In addition, an Amended Complaint was filed on July 30, 2019 (ECF No. 15).  The Amended Complaint was substantively identical to the original Complaint, but it updated the caption to include the last four digits of Plaintiff's Social Security number and to name Andrew Saul, who was then the Commissioner of Social Security, as the Defendant.  *See* ECF No. 15 ¶¶ 2-3.

administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[4]  ECF Nos. 33, 36.

For the reasons that follow, Plaintiff's motion (ECF No. 33) is DENIED, the Commissioner's

motion (ECF No. 36) is GRANTED, and the case is remanded for further administrative

proceedings.

## BACKGROUND

### I.    Procedural History

On or about May 15, 2012, Plaintiff filed an application for DIB, alleging December 13,

2011, as the onset date of his disability.  Administrative Record ("AR") 175-81[5]; *but see* AR

110-11, 202 (indicating that Plaintiff filed for DIB on May 14, 2012).  Plaintiff claimed he was

disabled due to sudden hearing loss in his left ear, with unyielding ringing in the ear, an inability

to locate the source of sounds, difficulty in comprehending speech, difficulty pronouncing

words, memory impairment, difficulty concentrating/focusing, anxiety and depression, difficulty

sleeping, and fatigue.  AR 111, 206.  Following the denial of Plaintiff's claim by the Social

Security Administration (the "SSA") on September 6, 2012, AR 110-20, 121-24, Plaintiff

requested a hearing before an administrative law judge ("ALJ"), AR 127-30.  An administrative

hearing was held on July 23, 2013 before ALJ Michael A. Rodriguez.  AR 29-109.  On

September 13, 2013, ALJ Rodriguez issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act (the "Act") from the alleged onset date through the

date of the decision.  AR 16-23.  Plaintiff subsequently filed a request for review of that decision

---

[4] Sentence four of § 405(g) provides that the court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

[5] Citations to "AR" refer to the certified copy of the administrative record filed by the Commissioner.  ECF No. 27.

with the SSA's Appeals Council, which was denied on January 6, 2015.  AR 1-6.  On February

2, 2015, Plaintiff filed a lawsuit in this District seeking judicial review of the ALJ's decision.

*See Madigan v. Commissioner of the Social Security Administration*, No. 15-cv-773 (CM) (FM).

That case was remanded to the Commissioner for further administrative proceedings pursuant to

the parties' stipulation, which was so-ordered by the Court on October 1, 2015.  *Id.* at

ECF No. 11.

On March 7, 2016, the Appeals Council vacated ALJ Rodriguez's decision and remanded

the case to a different ALJ with instructions regarding the issues to be resolved and the analysis

to be employed.  AR 650-53.  A second administrative hearing was held on July 20, 2017 before

ALJ Dennis G. Katz.  AR 596-649.  On November 1, 2017, ALJ Katz issued a decision finding

that Plaintiff was not disabled within the meaning of the Act from the alleged onset date through

his date last insured.[6]  AR 503-21.  Plaintiff sought review of ALJ Katz's decision by the

Appeals Council, specifically taking exception to various findings by ALJ Katz.  AR 753-57.  On

April 22, 2019, the Appeals Council issued its determination that Plaintiff's exceptions had no

merit, thus making ALJ Katz's November 1, 2017 decision the final decision of the

Commissioner.  AR 494-98.  The instant lawsuit, seeking judicial review of ALJ Katz's decision,

was filed on June 19, 2019.

---

[6] The "date last insured" is the last date a claimant is eligible to receive DIB, and the date is calculated based on the claimant's work history.  Specifically, "[t]o qualify for Social Security [DIB], a claimant generally must, *inter alia*, have earned at least twenty 'quarters of coverage' over the ten-year period prior to the onset of disability."  *Feliciano v. Colvin*, No. 12-cv-6202 (PGG), 2015 WL 1514507, at *1 n.1 (S.D.N.Y. Mar. 31, 2015).  "[W]hen a claimant does not show that a currently existing condition rendered [him or] her disabled prior to [his or] her date last insured, benefits must be denied."  *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017).  Here, Plaintiff does not dispute that his "date last insured" for purposes of his claim for DIB was September 30, 2015.  Accordingly, Plaintiff was required to establish that his disability arose on or before September 30, 2015, to qualify for DIB.  *See* AR 507.

II.     **The Supreme Court's Decision in *Carr v. Saul* and Plaintiff's Choice to Proceed**

On April 22, 2021, the Supreme Court issued a decision in *Carr v. Saul*, 141 S. Ct. 1352 (2021), in which it held that applicants for Social Security disability benefits who had hearings conducted, and/or decisions issued, by an ALJ whose appointment was not in accordance with the Appointments Clause of the U.S. Constitution were not required to administratively exhaust their Appointments Clause challenges during proceedings before the SSA before raising such challenges for the first time in federal court.

In light of the *Carr* decision, and to promote efficiency and judicial economy, this Court issued an order on May 10, 2021 directing the parties to meet and confer regarding whether this case should be remanded to the Commissioner for a new hearing before a constitutionally appointed ALJ different from the ALJ who previously heard and adjudicated Plaintiff's claim for benefits.  *See* ECF No. 40.  The May 10, 2021 Order noted that in this case, the hearing before ALJ Katz was conducted, and ALJ Katz's decision was issued, before the appointments of any SSA ALJs were ratified by the Acting Commissioner of the SSA in July 2018.  *Id.*; *see* 84 Fed. Reg. 9583 (2019) (Social Security Ruling 19-1p).  Plaintiff was ordered to submit a letter on or before June 1, 2021 setting forth whether or not he believed the case should be remanded, and the Commissioner was authorized to submit a response, if necessary, on or before June 8, 2021. ECF No. 40.  The Order stated that "[s]hould Plaintiff elect not to request a remand on the Appointments Clause issue at this stage, this may constitute a waiver of the Appointments Clause challenge in all further proceedings, including appeals." *Id.*  The Order also specified that "[a] decision not to request a remand will not prejudice the Plaintiff in any way before this Court, nor will it affect the timing of this Court's decision on the pending motions in this matter should the case remain in federal court." *Id.*

On May 24, 2021, Plaintiff submitted a letter in response to the Order.  ECF No. 41.
Plaintiff's counsel indicated that "this case **should not** be remanded to comport with the *Carr*
decision."  *Id.* (emphasis in original).  The letter mistakenly argued that *Carr* is inapplicable in
this matter because ALJ Katz had been appointed to his position in 2004, and possibly earlier,
and had served as the Chief Administrative Law Judge in the White Plains Hearing Office for
many years.  *Id.*  Assuming the accuracy of Plaintiff's counsel's representation, the timing of
ALJ Katz's original appointment clearly makes *Carr* potentially relevant to the consideration of
this case; nevertheless, Plaintiff was in no way obligated to request a remand based on the
Appointments Clause issue.  The Commissioner did not respond to Plaintiff's letter, and thus did
not contest Plaintiff's decision not to request a remand based on the propriety of ALJ Katz's
appointment under the Appointments Clause.

### III.     Testimonial, Medical, and Vocational Evidence

Plaintiff has provided a summary of his pre-hearing responses on SSA forms and hearing
testimony from both hearings, as well as the medical evidence contained in the administrative
record.  *See* ECF No. 33-1 ("Pl.'s Mem. of Law") at 7-20.  Both parties have provided
summaries of the vocational expert evidence and testimony.  Pl.'s Mem. of Law at 20-23; ECF
No. 37 ("Def's Mem. of Law") at 2-4.  Based on an independent and thorough examination of
the record, the Court finds the parties' summaries of the evidence are accurate and largely
comprehensive.  Accordingly, the Court adopts the factual background as set forth by the parties,
and discusses the evidence in the record in more detail to the extent necessary to a determination
of the issues in this case.  *See Pierro v. Comm'r of Soc. Sec.*, No. 18-cv-5478 (SDA), 2019 WL
3338127, at *1 (S.D.N.Y. July 24, 2019).

## APPLICABLE LEGAL PRINCIPLES

### I.    Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when determining that the plaintiff was not disabled.  *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "'Failure to apply the correct legal standards is grounds for reversal.'"  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must decide whether the Commissioner's decision was supported by substantial evidence.  *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 106 (quotation marks omitted).  When determining whether substantial evidence supports the Commissioner's decision, it is important that the court "carefully consider[] the whole record, examining evidence from both sides."  *Tejada*, 167 F.3d at 774.  "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  If the "decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its own] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

### II.    Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 423(d)(1)(A).  An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.*

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow in determining whether a particular claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4).  The Commissioner first considers whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), (b).  If the claimant is engaged in substantial gainful activity, then the Commissioner will find that the claimant is not disabled; if the claimant is not performing substantial gainful activity, then the Commissioner proceeds to the second step, at which the Commissioner considers the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant suffers from any severe impairment, the Commissioner at step three must decide if the impairment meets or equals a listed impairment; listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of SSA regulations.  20 C.F.R § 404.1520(a)(4)(iii), (d).

If the claimant's impairments do not satisfy the criteria of a listed impairment at step three, the Commissioner must then determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  A claimant's RFC represents "the most [he or she] can still

do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). After determining the claimant's RFC, the Commissioner proceeds to the fourth step to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)-(f). If it is found that the claimant cannot perform his or her past relevant work, the Commissioner proceeds to step five to consider the claimant's RFC, age, education, and work experience to determine whether he or she can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v), (g). To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, in light of his or her RFC and vocational factors, is capable of performing. 20 C.F.R. § 404.1560(c).

The claimant bears the burden of proof on the first four steps of this analysis. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998). If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he or she need not proceed with the remaining steps. *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000). If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of performing other work. *DeChirico*, 134 F.3d at 1180.

## DISCUSSION

Presently before the Court are Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and the Commissioner's motion for remand pursuant to sentence four of 42 U.S.C. § 405(g). As discussed below, the Court finds that the ALJ did not fully develop the record at step five of his disability analysis, and therefore the case must be remanded for further administrative proceedings.

## I.   The ALJ's Decision

ALJ Katz applied the five-step analysis described above and issued a decision finding that Plaintiff was not disabled from the alleged onset date of December 13, 2011, through the

date last insured, September 30, 2015.  AR 506-21.  First, the ALJ found that Plaintiff had not

engaged in substantial gainful activity between December 13, 2011 and September 30, 2015.

AR 509.  Second, the ALJ determined that Plaintiff had the severe impairments of "sensorineural

hearing loss in the left ear; an affective disorder; and an anxiety disorder."  AR 509.[7]  Third, the

ALJ concluded that Plaintiff did not have an impairment or any combination of impairments that

met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1.  AR 510-12.

> According to the ALJ, Plaintiff retained the RFC to perform

>> a full range of work at all exertional levels but with the following
>> nonexertional limitations: the claimant was not able to work in places
>> where he would be constantly exposed to loud noises.  Due to hearing loss
>> on the left side, the claimant was not able to discern the direction from
>> where sounds originated; was not able to constantly tolerate "loud" sounds
>> (*i.e.* more than 10 decibels); was required to have face-to-face
>> communications with coworkers, supervisors and the general public due to
>> partial loss of hearing; and was only able to perform basic, simple,
>> repetitive and routine unskilled work tasks.

AR 512-19.

The ALJ determined Plaintiff's RFC by applying the two-step framework described in 20

C.F.R. § 404.1529 in his consideration of Plaintiff's symptoms.  AR 512.[8]  He also considered

---

[7] The ALJ noted that Plaintiff had non-severe impairments of "hypertension; hypercholesterolemia; lumbago; and trigger finger, left, status-post release."  AR 509.  As set forth in the ALJ's decision, none of these non-severe impairments "were alleged to limit the claimant's ability to work," and the RFC "fully accounts for the effects of all the claimant's medically determinable impairments, whether severe or non-severe."  *Id.*  Plaintiff does not contest any findings regarding non-severe impairments as part of his submissions in this appeal.

[8] The ALJ specified that the first step in this process is to determine "whether there is an underlying medically determinable physical or mental impairment(s)—*i.e.*, an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms."  AR 512.  The second step in the process, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown," is that the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's

medical opinion evidence in accordance with 20 C.F.R. § 404.1527. *Id.*[9]  The ALJ provided an

extensive summary of the evidence in the record, including Plaintiff's statements about his

symptoms and activities of daily living as well as the medical records.  AR 512-19.  The ALJ

found that "the claimant's statements about the intensity, persistence, and limiting effects of his

symptoms are inconsistent with the overall medical evidence, which does not support the degree

of severity alleged by the claimant."  AR 513.  The ALJ cited the medical evidence in the record,

noting that the "medical observations by treating physicians are not at all consistent with the

claimant's allegations of a substantial deficit in communication ability and a substantial deficit in

his attention span."  AR 515.  The ALJ added that "[m]ost significantly, the foregoing

observations by his treating physicians (other than psychiatrist Dr. Muller[10]) did not note any

signs or symptoms of psychiatric debilitation, as alleged by the claimant."  *Id.*  In weighing the

medical evidence, the ALJ found that Dr. Muller's opinion that "the claimant experienced

'marked difficulties' in concentration, frustration tolerance and the ability to complete tasks that

_____

symptoms to determine the extent to which they limit the claimant's functional limitations," and
"whenever statements about the intensity, persistence, or functionally limiting effects of pain or
other symptoms are not substantiated by objective medical evidence, [the ALJ] must consider
other evidence in the record to determine if the claimant's symptoms limit the ability to do work-
related activities."  *Id.*

[9] This SSA regulation embodies the treating source rule, pursuant to which the opinions
of a treating source as to the nature and severity of a claimant's impairments are generally, but
not always, entitled to "more weight" relative to those from other treatment providers.  20 C.F.R.
§ 404.1527(c)(2); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995).  Such opinions are given
controlling weight if they are "well-supported by medically acceptable clinical and laboratory
diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the
record.  20 C.F.R. § 404.1527(c)(2); *Rugless v. Comm'r of Soc. Sec.*, 548 F. App'x 698, 700 (2d
Cir. 2013) (summary order).  Citations to SSA regulations here are to the version of the treating
source rule applicable to DIB claims filed before March 27, 2017.  Plaintiff filed for DIB on or
about May 15, 2012; accordingly, this version of the treating source rule is the applicable
standard for this matter.

[10] Dr. Muller is a licensed clinical psychologist, not a psychiatrist.  *See* AR 438, 1001.

he starts; and that the claimant was generally depressed about his diminished capacities and anxious about his social and vocational future . . . is not consistent with the other medical evidence" discussed in the ALJ's decision.  AR 518-19.

At the fourth step, citing the hearing testimony of the vocational expert, the ALJ found that Plaintiff's past relevant work corresponded to the occupations of property manager (skilled, light exertion), graphic designer (skilled, sedentary exertion), and management consultant (skilled, light exertion).  AR 519; *see* AR 634-35.  The ALJ found that "[d]ue to the skill level required" by Plaintiff's prior occupations, Plaintiff could not perform his past relevant work as actually or generally performed as of his date last insured.  AR 519.

At the fifth step, the ALJ noted that Plaintiff's birthday was May 21, 1954, and that at 61 years old, he was an individual "closely approaching retirement age" on his date last insured, and "of advanced age" prior to May 21, 2014.  *Id.*  The ALJ also concluded that Plaintiff had at least a high school education and was able to communicate in English, and that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  *Id.* (citing SSR 82-41, "Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979,"[11] and 20 C.F.R. Part 404, Subpart P, Appendix 2).[12]

---

[11] 1982 WL 31389 (S.S.A. 1982).

[12] Because the ALJ found that Plaintiff had only nonexertional limitations, he used Section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making.  AR 520 (citing SSR 85-15, "Titles II and XVI: Capability to do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," 1985 WL 56857 (S.S.A. 1985)).

The ALJ found that through the date last insured, Plaintiff's "ability to perform work at all exertional levels was compromised by nonexertional limitations."  AR 520.  He explained that in order to "determine the extent to which these limitations eroded the occupational base of unskilled work at all exertional levels," he  "asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity."  *Id.*[13]  The vocational expert determined that, given all of these factors, Plaintiff could perform certain unskilled jobs, including the sedentary exertional level position of addressor of envelopes (approximately 67,000 jobs existing nationally) and the light exertional level positions of (1) inspector/hand packager (approximately 500,000 jobs existing nationally); (2) mail clerk, back office (approximately 90,000 jobs existing nationally); and (3) assembler, small products II (approximately 250,000 jobs existing nationally).  *Id.*  Relying upon the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  *Id.*  The ALJ therefore concluded that Plaintiff was not disabled from the alleged onset date of December 13, 2011, through the date last insured of September 30, 2015.  AR 520-21.

## II.    The ALJ's Step Five Determination Is Not Supported by Substantial Evidence, and Requires Remand for Further Administrative Proceedings

Plaintiff asserts that the ALJ committed legal error by misapplying 20 C.F.R. § 404.1568(d)(4) in determining that Plaintiff was not disabled.  *See* Pl.'s Mem. of Law at 28-30. This SSA regulation states that "[i]f you are of advanced age (age 55 or older), and you have a

---

[13] SSA regulations provide that "[i]f the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist."  20 C.F.R. § 404.1566(e).

severe impairment(s) *that limits you to sedentary or light work*, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other *skilled or semiskilled work* (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s)."  20 C.F.R. § 404.1568(d)(4) (emphases added).  According to Plaintiff, the ALJ erred by eliciting from the vocational expert a list of *unskilled* jobs that Plaintiff could perform even after the vocational expert testified that Plaintiff did not have any transferable skills, and that the ALJ further erred by finding, based on the vocational expert's testimony, that Plaintiff could perform *unskilled* work.  Plaintiff maintains that the Commissioner's decision should be reversed, and the case should be remanded solely for a calculation of benefits, because the case is "fully developed"; the record proves disability; the regulations direct a finding of "disabled"; and further administrative proceedings would not alter this outcome.  Pl.'s Mem. of Law at 29.[14]

In contrast, the Commissioner contends that the case should be remanded for further administrative proceedings so that the ALJ may "reconsider at step five whether work exists in significant numbers in the national economy that Plaintiff can perform in light of his age, education, prior work experience, and RFC finding."  Def.'s Mem. of Law at 6-8.

* * * * * * * * * *

---

[14] Plaintiff mentions only in passing that the ALJ "overlooked the applicable treating physician rule," but then argues against remand for further consideration of that rule.  *See* Pl.'s Mem. of Law at 29 (quoting *Del Pilar v. Sullivan*, 756 F. Supp. 117 (S.D.N.Y. 1990) ("it would be an injustice to remand to further consider the treating physician rule when the record demonstrates other compelling, uncontradicted evidence of disability")).  Because Plaintiff neither offers any argument in support of his offhand assertion that the ALJ misapplied the treating source rule nor argues that the ALJ's decision should be reversed and remanded on this basis, the Court does not consider or decide that issue here, particularly because the Court finds that remand is warranted on a ground that was actually addressed by the parties.

Pursuant to SSA regulations, where a claimant has only nonexertional limitations, an ALJ is required to engage in a two-step analysis to evaluate disability.  First, the ALJ must determine "how much the person's occupational base—the entire exertional span from sedentary work through heavy (or very heavy) work—is reduced by the effects of the nonexertional impairment(s)"; and second, the ALJ must determine "whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, and work experience."  SSR 85-15, 1985 WL 56857, at *3. As noted above, SSA regulations provide that a person of advanced age who is limited to sedentary or light work will be found unable to make an adjustment to other work unless that person has skills that can be transferred to other skilled or semiskilled work that the person can still perform.  20 CFR § 404.1568(d)(f).  By its own terms, however, this regulation only applies to claimants whose impairments specifically limit them to sedentary or light work.  *See Petite v. Colvin*, No. 5:15-cv-543 (GJS), 2016 WL 344478, at *6 (C.D. Cal. Jan. 27, 2016) ("The plain language of regulations like Section 404.1568(d)(4) . . . forecloses their application to a person who can perform more than light work."), *aff'd*, 706 F. App'x 342 (9th Cir. 2017); *Russell v. Astrue*, No. 6:11-cv-02571 (RDP), 2012 WL 4953183, at *3 (N.D. Ala. Oct. 15, 2012) ("[The] presumption [of 20 C.F.R. § 404.1568(d)(4)] does not apply if the claimant is not limited to sedentary or light work.  Thus, an individual age fifty-five or older, who can perform any range of medium work, is not presumed incapable of adjusting to other work under 20 C.F.R. § 404.1568(d)(4), merely because [he or] she lacks transferable job skills.").

Here, the ALJ properly engaged in the first step of the SSR 85-15 analysis—based on the testimony of the vocational expert, he concluded that Plaintiff's nonexertional limitations did not completely erode his occupational base, because there were at least some jobs that he could

14

perform.  AR 519-20.  The only jobs that were available to the ALJ for consideration, however, were unskilled positions, because the vocational expert testified, in response to hypotheticals posed by the ALJ, that in light of Plaintiff's nonexertional limitations, none of his skills from his past relevant work would be transferrable.  AR 639.  Of the four unskilled jobs identified by the vocational expert and adopted as part of the step five analysis by ALJ Katz, one was at the sedentary exertional level and three were at the light exertional level.  AR 520, 640-41.  Even though the ALJ found that Plaintiff retained the RFC for "a full range of work at all exertional levels," AR 512, at no point in the vocational expert's testimony, or in the ALJ's decision, was there any discussion of whether there were any unskilled jobs that Plaintiff could perform at the medium or heavy exertional levels.  The ALJ did not ask this specific question during the hearing, and the vocational expert did not categorically exclude the possibility that Plaintiff, with his nonexertional limitations, could perform medium or heavy unskilled work.  Notably, at Plaintiff's first administrative hearing, a different vocational expert testified that Plaintiff would be able to perform the job of hand packager, an unskilled job at the medium exertional level.  AR 94-95.

The Commissioner concedes that if the ALJ had concluded that Plaintiff was limited only to light and sedentary work, then the "vocational adjustment" analysis required at the second step of SSR 85-15 would require a finding that Plaintiff is disabled based on an application of 20 C.F.R. § 404.1568(d)(4), because Plaintiff is an individual of advanced age (over 55) and the record is clear that there are no skills that Plaintiff could transfer to other skilled or semiskilled work in light of his nonexertional limitations.  *See* Def.'s Mem. of Law at 8.  But ALJ Katz never made a determination that Plaintiff was limited only to light and sedentary work, and if anything, the testimony from the first administrative hearing suggests that there may not be any

such limitation for Plaintiff.  Therefore, based on the current record, Plaintiff does not categorically fall within the scope of 20 C.F.R. § 404.1568(d)(4), which only expressly covers individuals who are limited to work at the sedentary or light exertional levels, and Plaintiff's arguments predicated on the applicability of that regulation necessarily fail.[15]

This case must be remanded for further administrative proceedings so that the ALJ can develop the record to enable him to determine whether, given Plaintiff's age, education, work experience, and RFC, including Plaintiff's nonexertional limitations, he would be able to make an adjustment to other work existing in significant numbers in the national economy. Specifically, it is critical that the ALJ further develop the record so that he is able to determine whether there are unskilled jobs at the medium or heavy exertional levels that Plaintiff can perform in light of his nonexertional limitations.  If the answer to this question is yes, then this may support ALJ Katz's conclusion that Plaintiff was not disabled during the relevant period.  If the answer to that question is no, and Plaintiff is limited to only light or sedentary positions, then 20 C.F.R. § 404.1568(d)(4) would be applicable here, and in view of the existing vocational expert testimony regarding transferability of skills, the record suggests that Plaintiff—given his age, education, work experience, and RFC, and the governing regulations —would not be able to

---

[15] Plaintiff's arguments presuppose that he was limited to sedentary and light work, even though there is no such limitation in the ALJ's RFC determination.  This approach is embodied by a rhetorical question that Plaintiff poses in his reply brief:  "Who would suggest an over 55-year-old with equilibrium and balance problems could handle the rigors of medium and heavy work?"  Pl.'s Mem. of Law at 6.  But the answer to this question is not as obvious as Plaintiff implies; indeed, the Commissioner maintains in her reply brief that the ALJ's finding that Plaintiff had only "mild" balance issues is supported by substantial evidence in the record.  *See* ECF No. 39 (Def.'s Reply Mem. of Law) at 2-3.  Remand is necessary here because the question of whether there are jobs at the medium and heavy exertional levels that Plaintiff could perform, in light of his age, education, work experience and RFC, must be answered in the first instance by a vocational expert and an ALJ.

make the adjustment to any of the unskilled jobs identified by the vocational expert at the administrative hearing before ALJ Katz.

Because this critical piece of information is missing from the record, there is not substantial evidence in the record to support the ALJ's decision at step five of the sequential analysis, and remand for further proceedings is necessary to address this specific deficiency.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 33) is DENIED, the Commissioner's motion for remand (ECF No. 36) is GRANTED, and the case is remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: March 29, 2022
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge